SAVASENIORCARE, LLC, Plaintiff,

v.

BEAZLEY INSURANCE COMPANY, INC., Defendant.

CIVIL ACTION NO. 1:14-CV-2738-RWS

United States District Court, N.D. Georgia, Atlanta Division.

Signed July 14, 2016

Anthony Paul Tatum, Michael Benjamin Wakefield, Shelby S. Guilbert, Jr., Nicholas Griffin Hill, King & Spalding LLP, Atlanta, GA, for Plaintiff.

Clayton N. Matheson, Daniel McNeel Lane, Jr., Matthew E. Pepping, Katharine Southard Fraser, Akin Gump Strauss Hauer & Feld, San Antonio, TX, Benjamin McCulloh Byrd, Michael Singleton Reeves, Friend Hudak & Harris, LLP, Atlanta, GA, for Defendant.

## ORDER

RICHARD W. STORY, United States District Judge

This case comes before the Court on Plaintiff SavaSeniorCare LLC's Motion for Partial Judgment on the Pleadings [78] and Defendant Beazley Insurance Company's Motion for Judgment on the Pleadings [79]. After reviewing the record, the Court enters the following Order.

### Background

The Court has already provided a more complete background of this case in a previous Order [72]. Therefore, the Court will provide only a brief recitation of the facts that are particularly relevant to the pending motions.

This case arises out of an insurance dispute between Plaintiff SavaSeniorCare, LLC ("Sava") and Defendant Beazley Insurance Company, Inc. ("Beazley"). Sava obtained private company directors and officers ("D&O") insurance coverage to protect itself from, *inter alia*, costs of defending lawsuits brought against Sava and its officers, directors, and managers. (Am. Compl., Dkt. [8] ¶ 2.) Former Defendant Zurich, which is no longer a party to this action (see Dkt. [58]), provided the primary coverage, while Beazley was the excess carrier (Id. ¶ 36).

Sava seeks indemnification for its costs in defending the lawsuit that underpins this case, Schron v. Grunstein, No. 650702/2010 (N.Y. Sup. Ct.) (the "Schron Action"). (Id. ¶ 1.) The plaintiffs in the Schron Action (the "Schron plaintiffs") sued Sava and two of its former directors and managers, Leonard Grunstein and Murray Forman, alleging that they engaged in misconduct that damaged real estate investor Rubin Schron and other

entities under his control. (Id. ¶ 3.) Sava sought reimbursement of these defense costs from its primary D&O insurer, Zurich, and its excess D&O insurer, Beazley. (Id. ¶¶ 4-5.) Zurich reimbursed Sava for a portion of its costs in defending itself in the Schron Action, but denied coverage for "nearly half" of Sava's incurred costs. (Am. Compl., Dkt. [8] ¶ 4.) Additionally, Zurich denied coverage for Sava's costs incurred defending Grunstein and Forman on the basis that the claims in the Schron Action "did not allege wrongful acts against Grunstein and Forman in their capacities as 'Insured Persons.'" (Id. ¶ 5.) Beazley expressly adopted Zurich's coverage position without citing any additional bases for denial of coverage. (Id.)

The Schron plaintiffs asserted fifteen causes of action seeking, *inter alia,* specific performance of an option to acquire Sava's former parent, SVCARE Holdings, LLC (the "SVCARE option"). (Id. ¶ 48; Schron Compl., Ex. C to Compl., Dkt. [1-4].) Performance of the SVCARE option would have effectively transferred ownership and control of Sava to Schron and removed Grunstein and Forman from their positions as directors and managers of Sava. (Am. Compl., Dkt. [8] ¶ 48.) The Schron plaintiffs alleged in their Complaint that Grunstein and Forman "serve as Directors of Sava, that Grunstein is the Chairman of the Board," and that Grunstein and Forman breached various duties in the drafting and negotiation of various documents. (Id. ¶¶ 46, 50.) With respect to Sava's master lease with Schron-controlled entities, the Schron plaintiffs alleged that Grunstein and Forman "obtained favorable rental terms for Sava through a breach of fiduciary duty to Schron." (Id. ¶ 51.) Among other claims, the Schron plaintiffs further alleged that they were injured by Grunstein and Forman's representation of Sava in connection with a $1 billion refinancing transaction, in which Grunstein and Forman purported to represent

Schron's interests but altered the terms of Sava's master lease, the SVCARE option, and a loan agreement between SVCARE and another Schron-controlled entity. (Id. ¶ 52.) The Schron plaintiffs alleged that Sava's wrongful acts, as well as acts of Grunstein and Forman as directors and/or managers of Sava, gave rise to various claims for damages and equitable relief. (Id. ¶ 56.)

Grunstein and Forman requested that Sava indemnify them for their costs in defending the Schron Action, pursuant to the Limited Liability Company Agreement (the "Operating Agreement") between Sava and SVCARE Holdings LLC ("SVCARE"). (Id. ¶ 58.) Grunstein and Forman were Covered Persons entitled to indemnification pursuant to the terms of that agreement, as long as the claims related to actions they took while acting for or on behalf of Sava. (Id. ¶ 58, 60.) Sava's Board of Directors authorized indemnification of Grunstein and Forman's defense costs. (Id. ¶ 61.) Accordingly, in addition to paying its own defense costs, Sava ultimately paid millions of dollars for Grunstein and Forman's defense costs. (Id. ¶¶ 63-64.)

Zurich agreed to "provide coverage for the defense of Sava, exclusively, in the Schron Action, subject to a full reservation of rights, including a review of the defense counsel invoices incurred to date." (Id. ¶ 70.) Zurich denied coverage for Grunstein and Forman's defense costs on the ground that "the allegations in the Schron Action do not allege wrongful acts in their respective insured capacities." (Id. ¶ 71.) Similarly, Beazley informed Sava that it adopted Zurich's coverage position, meaning that Beazley agreed to provide coverage for Sava's defense, but not for Grunstein and Forman because the complaint does not allege wrongful acts in their ca-

pacity as Sava directors or officers. (Id. ¶ 72.)

Sava initiated this action on August 22, 2014, seeking payment of its defense costs for the claims against Grunstein and Forman from Zurich and Beazley, and filed an Amended Complaint on September 12, 2014. (Dkt. [8].) Sava alleges that Zurich and Beazley wrongfully denied "coverage for the Defense Costs arising out of Grunstein's and Forman's defense of the Schron Action." (Id. ¶ 80.)

Sava moves for Partial Judgment on the Pleadings [78]; Beazley also moves for Judgment on the Pleadings [79]. The resolution of these motions depends wholly upon the insurance contract which has been provided to the Court, and both parties agree that this contract binds the parties.

### Discussion

The issues presented in the parties' cross motions for judgment on the pleadings overlap. As mentioned, the dispute centers around the interpretation of certain provisions within the contract. There are no material facts in dispute because both parties agree that the Policy controls. Thus, the interpretation of the contract can be determined as a matter of law. The Court will first lay out the legal standard before turning to the merits of the parties' arguments.

### I. Legal Standard

■ Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc., 404 F.3d 1297, 1303 (11th Cir. 2005). In considering a motion for judgment on the pleadings, the Court will consider the substance of the pleadings and any judicially noticed facts. Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir.1998).

### II. Ripeness

■ First, the Court must determine whether Sava's Motion for Partial Judgment on the Pleadings ("Sava's Motion") [78] is ripe. Beazley asserts that the Court cannot rule on Sava's Motion because Beazley's counterclaim for rescission is pending. (Def.'s Resp., Dkt. [80] at 7.) Beazley asserted a counterclaim of rescission based upon the assertion that Sava did not disclose circumstances that could give rise to a Claim, as required by the application for insurance coverage. (Am. Answer, Dkt. [73] ¶¶ 142-149.) Beazley argues that the Court should deny Sava's Motion because the Excess Policy, the policy as issue in Sava's motion, is void ab initio. (Def.'s Resp., Dkt. [80] at 8.)

Defendants rely upon Nationwide Real Estate Inv., LLC v. Atrium 5 Ltd., No. 1:13–CV–01040–RWS, 2015 WL 114183, (N.D.Ga. Jan. 8, 2015) to assert that the Court cannot rule on Plaintiff's motion. In that case, however, this Court denied the plaintiff's motion for summary judgment because there was a genuine issue of material fact surrounding whether the defendant relied upon the plaintiff's submitted information. Nationwide Real Estate, 2015 WL 114183 at *6. Accordingly, this Court also denied the defendant's motion for summary judgment based on a rescission claim. Id. at *10. This Court did not determine that the pending rescission claim affected the Court's ability to rule on any of the motions before it. Defendants also rely on Fortney v. Lincoln Nat. Life Ins. Co., No. 1:11–CV–4337–RWS, 2013 WL 3831672 (N.D.Ga. July 15, 2013), vacated, No. 1:11–CV–4337–RWS, 2013 WL 5722713 (N.D.Ga. Oct. 17, 2013) for a simi-

lar proposition. This case does not support Defendant's proposition either–for it merely denied the defendant's motion for summary judgment on the basis of rescission after finding that the plaintiff's failure to disclose did not render the policy void. Fortney, 2013 WL 3831672, at *7.

This Court previously held that Beazley is allowed to pursue its rescission claim. (Order, Dkt. [72] at 14-17.) Beazley has not presented this Court with compelling evidence that the pendency of its counterclaim renders Sava's Motion moot. Sava's Motion only requests a ruling on the meaning of the Allocation Provision contained within the Policy, it does not ask this Court to enter judgment in its favor. Accordingly, the Court will continue its analysis of the Motions before it while also noting that the ruling on Sava's Motion will not affect Beazley's ability to present its counterclaim and affirmative defenses.

## III. Allocation Provision

The policy at issue contains an Allocation Provision which provides:

> If the Insureds incur both Loss covered by this policy and loss not covered by this policy either because a Claim against the Insureds includes both covered and uncovered matters or because a claim is made against both Insureds and others (including the Company in a Claim other than an Employment Practices Claim), then 100% of such Defense Costs will be considered covered Loss and all other such loss shall be allocated by the Insured Persons, the Company and the Underwriter between covered Loss and uncovered loss based upon the relative legal exposure of the parties to covered and uncovered matters.

(Policy, Dkt. [8-1] at 10) (emphasis added). Sava's Motion asks this Court to find that the Allocation Provision requires Beazley to pay 100% of the Defense Costs incurred in the Schron Action. Sava asserts that the

Allocation Provision is triggered because Sava is an Insured that incurred loss under the policy, and is therefore entitled to reimbursement of all costs incurred in defending Grunstein and Forman in the Schron Action. (Sava's Mot., Dkt. [78-1] at 15.) Sava interprets the Allocation Provision to mean that Beazley agreed that it would not seek to allocate any uncovered Defense Costs of the Insureds, and instead pay 100% of such Defense Costs, as long as there is at least one alleged Wrongful Act against the Insureds, even if there are other alleged Wrongful Acts against the Insured, or others, that would not be covered under the Policy. (Sava's Mot., Dkt. [78-1] at 6-7.) Beazley argues that the Allocation Provision only requires Insurers to pay such defense costs that the Insureds incur defending a claim. (Beazley's Mot., Dkt. [79-1] at 22.) According to Beazley, because Grunstein and Forman were not sued in their Insured capacities, they did not incur any covered loss, and the Allocation Provision does not provide coverage. (Id.)

### A. Plain Language

■ The Court will consider the plain language of the provision because "[i]nsurance in Georgia is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous terms." W. Pac. Mut. Ins. Co. v. Davies, 267 Ga.App. 675, 676, 601 S.E.2d 363 (2004) (citations omitted). Sava first argues that the plain language of the contract supports its position. (Sava's Mot., Dkt. [78-1] at 14-15.) The Insureds have incurred both losses covered by the policy (Sava's defense costs, part of Grunstein and Forman's defense costs) and losses not covered by the policy (remainder of Grunstein and Forman's defense costs) because a Claim (the suit in Schron) against the Insureds (Sava, Grunstein, and Forman) includes both covered (claims against Sava,

some claims against Grunstein and Forman) and uncovered matters (remainder of claims against Grunstein and Forman's defense costs). (See id.)

Beazley asserts that the plain language of the provision provides the opposite result–no coverage for Grunstein and Forman. (Beazley's Mot., Dkt. [79-1] at 22.) According to Beazley, Grunstein and Forman are not the "Insureds" referenced in the Allocation Provision, and thus did not incur any loss covered by the policy. (Id.) Beazley therefore concludes that the plain language of the Allocation Provision does not provide coverage of the defense costs. (Id.)

█ However, Beazley's argument fails because Grunstein and Forman were sued in their capacity as Insured Persons. Under Georgia law, the Court should consider the language of the complaint when determining whether claims are covered by the Policy, and the insurer has a duty to defend the action if the facts alleged "even arguably bring the occurrence within the policy's coverage." City of Atlanta v. St. Paul Fire & Marine Ins. Co., 231 Ga.App. 206, 207, 498 S.E.2d 782 (1998) (citing Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc., 224 Ga.App. 557, 481 S.E.2d 850 (1997). According to Insurance Clause B, coverage is triggered when an Insured becomes legally obligated to pay on account of any Claim made against them for a Wrongful Act. (Policy, Dkt. [8-1] at 4.) Of the eleven claims alleged against Grunstein and Forman, three relate to conduct that plausibly could not have been performed by Grunstein and Forman absent their relationship to Sava. (See Beazley's Mot., Dkt. [79-1] at 12-13.)) Therefore, the allegations against Grunstein and Forman relating to their duties as directors and officers are claims for Wrongful Acts as defined in the Policy, meaning they are "covered matters" as referred to in the Allocation Provision.

Sava and Beazley also dispute the meaning of "Defense Costs" as used in the Allocation Provision. In the policy, Defense Costs are explicitly defined as "that part of Loss consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses ... incurred in defending or investigating Claims." (Policy, Dkt. [8-1] at 10) (emphasis omitted). Beazley asserts that Defense Costs are part of Loss, and Loss is defined as the total amount which the Insureds become legally obligated to pay on account of each Claim made against them for Wrongful Acts for which coverage applies. (Beazley's Mot., Dkt. [79-1] at 22.) Beazley further claims that Grunstein and Forman Defense Costs are not Defense Costs as defined in the Allocation Provision because Grunstein and Forman were not sued in their capacity as Insured Persons. (Id.) However, as discussed supra, Grunstein and Forman were sued in their Insured capacities.

### B. Insurance Clause B

As mentioned, Sava seeks recovery under Insurance Clause B. Beazley asserts that Sava's interpretation of the Allocation Provision requires expanded coverage of Clause B, which provides the following:

> The Underwriter shall pay on behalf of the Company all Loss for which the Company grants indemnification to the Insured Persons, as permitted or required by law, and which the Insured Persons have become legally obligated to pay on account of any Claim made against them, individually or otherwise ... for a Wrongful Act ..."

(Policy, Dkt. [8-1] at 10) (emphasis omitted). Beazley's argument is founded on the principle that Grunstein and Forman were not sued for a Wrongful Act; however, as the Court has found that they were sued in

their Insured capacity, Beazley's argument fails.

■ Beazley asserts that Sava's interpretation conflicts with Insuring Clause B and renders Insuring Clause B meaningless because Beazley states that Sava's interpretation means that insurance is created anytime a director is sued with Sava, regardless of the capacity in which the person is sued. (Beazley's Mot., Dkt. [79-1] at 23.) This assertion, along with the assertion that Sava's interpretation renders Insuring Clause B meaningless, is not persuasive considering the fact that the Allocation Provision only governs payment of Defense Costs. Accordingly, Insuring Clause B may be read in harmony with Sava's interpretation of the Allocation Provision while still retaining its independent meaning.

## C. Conclusion

The Court holds that the Allocation Provision requires Beazley to pay 100% of the costs incurred in defending Grunstein and Forman in the Schron Action.

### Conclusion

In accordance with the foregoing, Plaintiff SavaSeniorCare LLC's Rule 12(c) Motion for Partial Judgment on the Pleadings [78] is **GRANTED,** and Defendant Beazley Insurance Company's Motion for Judgment on the Pleadings [79] is **DENIED as moot.** The parties are **ORDERED** to file a proposed Amended Scheduling Order within fourteen days. The Court will then lift the stay on discovery.

**SO ORDERED,** this 14th day of July, 2016.