A97A2559, A97A2581, A98A0029, A98A0042.
CITY OF ATLANTA v. ST. PAUL FIRE
& MARINE INSURANCE COMPANY (four cases).
(498 SE2d 782)

JOHNSON, Judge.

The City of Atlanta entered into a contract with John D. Stephens, Inc., wherein Stephens agreed to clear, grade and obtain fill dirt from several parcels of property in connection with the City's construction of a new concourse at Atlanta's Hartsfield International Airport. The contract required that Stephens obtain commercial general liability insurance and name the City as an additional insured. St. Paul Fire & Marine Insurance Company issued the policy.

Stephens performed the work as directed by the City. Although the City had acquired some property in the area, the City directed Stephens to work on several parcels of property before it acquired proper title.

In an earlier action, four of the property owners sued the City and Stephens seeking injunctive relief and damages for the trespass upon their land. Stephens moved for and was granted summary judgment in the cases. The property owners appealed. This Court affirmed the grant of summary judgment to Stephens, holding that a contractor engaged in a public works project was not liable for damage to private property resulting from the work performed when it followed the directions of the employer and the damage did not result from the contractor's negligence or wilful tort. *Groves v. City of Atlanta*, 213 Ga. App. 455, 457 (1) (444 SE2d 809) (1994).

The property owners dismissed the actions against the City without prejudice, then refiled the suits. In the complaints, which are nearly identical, the property owners allege that the City took their property without first compensating them. Specifically, the property owners complain that the City and persons acting on its behalf wilfully and intentionally entered their property and caused it to be cleared of trees, topsoil and vegetation, excavated, and graded. The complaints further allege that the City and its agents continued to enter upon and damage the property after being notified that they were trespassing.

The City requested that St. Paul defend the City in these lawsuits, but St. Paul did not respond. The City then filed a third-party complaint against St. Paul seeking a declaratory judgment requiring that St. Paul defend and indemnify the City in the actions. St. Paul moved for summary judgment, alleging: the coverage afforded the City was limited to damage resulting from Stephens' work, when the damage here resulted from the City's failure to acquire title to the property before directing Stephens to perform work upon the property; the property owners' allegations against the City are based on

alleged wilful and intentional conduct and do not seek to recover damages caused by an accidental "event" as required by the policy; the damages alleged by the property owners are excluded from coverage by the intentional property damage exclusion contained in the liability insurance policy; and the policy's "control of property" exclusion precludes coverage for property damage to real property being worked on by Stephens if the damage resulted from that work.

The City filed a cross-motion for summary judgment, alleging that it was entitled to judgment regarding St. Paul's duty to defend based on the unambiguous language of the policy or, alternatively, based on an examination of the four corners of the policy. The trial court granted St. Paul's motion and, in so doing, effectively denied the City's cross-motion. The City appeals. All four cases involve identical issues, appellees, appellants, and briefs. Only the property owners differ. Therefore, we will consider the appeals together.

An insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured. *Canal Indem. Co. v. Chastain*, 228 Ga. App. 255, 256 (491 SE2d 474) (1997). We look to the allegations of the complaint to determine whether a claim covered by the policy is asserted. *Great Am. Ins. Co. v. McKemie*, 244 Ga. 84, 85-86 (259 SE2d 39) (1979). If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action. See *Penn-America Ins. Co. v. Disabled Am. Veterans,* 224 Ga. App. 557, 559 (481 SE2d 850) (1997), aff'd, 268 Ga. 564 (490 SE2d 374) (1997). However, as the Supreme Court held in *Great Am. Ins. Co.*, supra, where the complaint filed against the insured does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit. *Leader Nat. Ins. Co. v. Smith,* 177 Ga. App. 267, 274 (5) (339 SE2d 321) (1985).

The contract of liability insurance at issue in this case provides that St. Paul will pay "amounts any protected person is legally required to pay as damages for covered . . . property damage that . . . is caused by an event." It further provides that St. Paul has the "right and duty to defend any claim or suit for covered injury or damage made or brought against any protected person. . . ." For the reasons discussed below, we hold that St. Paul is not obligated to provide a defense or indemnify the City in the actions filed against it by the property owners.

1. St. Paul asserts there is no duty to defend or pay because the policy provides that St. Paul will pay for covered damages caused by an "event." According to the policy, *"(e)vent* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Although the policy does not define

"accident," in Georgia an accident is "an event which takes place without one's foresight or expectation or design." OCGA § 1-3-3 (2). An accident is an unexpected happening rather than one occurring through intention or design. *Allstate Ins. v. Grayes*, 216 Ga. App. 419, 421 (1) (454 SE2d 616) (1995).

The complaints in the cases before us do not allege that the damages were caused by any unexpected happening, but from the City's wilful and intentional entry and trespass upon their property. In their complaints, the property owners allege that the City continued to enter upon and damage the property even after the owners notified the City's agents that the property was privately owned. Based upon the allegations in the complaints and the policy language requiring that the damages result from an accidental event, St. Paul had no duty to provide a defense to or indemnify the City in the lawsuits. See *Leader Nat. Ins. Co.*, supra.

An insurer may have an obligation to defend even when the complaint against the insured does not allege facts which would give rise to coverage if the insured notifies the insurer of facts which would bring the claim within the policy coverage. See *Colonial Oil Indus. v. Underwriters Subscribing &c.*, 268 Ga. 561, 562 (2) (491 SE2d 337) (1997). If the City had facts outside those alleged in the complaint which would have shown that its acts were not intentional and came within the policy definition of "event," it was incumbent upon the City to apprise St. Paul of those facts. We see nothing in the record, including in the letter sent by the City to St. Paul in which the City requests that the insurer defend it, apprising St. Paul of facts showing that it acted other than intentionally in directing the clearing, excavating and grading of the property owners' land. The City apparently never brought to the insurer's attention any facts which would even arguably bring the claims within the coverage provided in the policy.

2. Similarly, St. Paul's refusal to defend and indemnify the City was justified based on the policy's intentional property damage exclusion. The insurance policy provides that it will not cover property damage "that is expected or intended by any protected person." Again, the complaints filed by the property owners contain allegations that the City intentionally entered upon and damaged their property. There are no allegations in the complaint that the City acted negligently, and no facts shown by the City which would have even arguably placed the claims within the policy coverage. Had the property owners won their lawsuits against the City and recovered damages for trespass and conversion, St. Paul would not have been obligated to pay the claims. Inasmuch as no claim covered by the policy was asserted, and the City failed to apprise the insurer of facts which would bring the claims within the coverage, St. Paul justifia-

bly refused the duty to defend the City in the actions. See *Great Am. Ins. Co.*, supra at 86.

3. Even if we found that St. Paul was obligated to provide a defense to the City in the lawsuits, we would have found no coverage. An insurer's duty to defend and its duty to indemnify are separate and independent obligations. See *Penn-America Ins. Co.*, supra at 559. The breach of the duty to defend does not enlarge indemnity coverage beyond the parties' contract. *Colonial Oil Indus.*, supra. In other words, if St. Paul had a duty to defend, the existence of that duty does not necessarily mean it was required to indemnify the City. In determining whether a party is entitled to summary judgment on the issue of indemnification, the courts are not limited to looking at the complaint and the policy. See, e.g., *Leader Nat. Ins. Co.*, supra at 273 (5).

In support of its motion for summary judgment, St. Paul submitted affidavits showing that the City's agents continued working on the property even after the City received notice from the owners that the property was privately owned. The City has not pointed to any evidence contradicting these affidavits. Under these circumstances, no genuine issue of material fact exists as to whether the City's actions came within the meaning of "event (meaning 'accident' in the policy)," and the intentional act exclusion.

Moreover, we point out that the City could not have reasonably expected that Stephens' liability insurance policy would provide coverage for damages resulting from the City's own failure to acquire title to property before directing Stephens to work on the property. See generally *Sapp v. State Farm Fire &c. Co.*, 226 Ga. App. 200, 203 (a) (486 SE2d 71) (1997). In fact, the City most likely required Stephens to have commercial general liability insurance to cover the contractor's own negligent acts and the City's vicarious liability therefor. The trial court did not err in granting summary judgment to St. Paul on the indemnity issue.

4. Based on the foregoing, the trial court did not err in denying the City's cross-motion for summary judgment on the issue of St. Paul's duty to provide a defense.

*Judgments affirmed. Pope, P. J., and Blackburn, J., concur.*

DECIDED MARCH 13, 1998·

*Clifford E. Hardwick IV, Robert B. Caput*, for appellant.
*Sullivan, Hall, Booth & Smith, Michael A. Pannier*, for appellee.