[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
————————————————

No. 19-11114
————————————————

D.C. Docket No. 1:17-cv-03657-LMM


AEGIS ELECTRIC & GAS INTERNATIONAL
SERVICES LIMITED,

Plaintiff-Counter Defendant-Appellee,

versus

ECI MANAGEMENT LLC,
f.k.a. ECI Management Corporation,

Defendant-Counter Claimant-Appellant,

NICHON ROBERSON,
on behalf of herself and all others similarly situated,

Defendant.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
————————————————

(July 30, 2020)

Before WILSON, LAGOA and HULL, Circuit Judges.

HULL, Circuit Judge:

In this declaratory judgment action, Appellant ECI Management, LLC ("ECI") appeals the district court's grant of summary judgment in favor of its insurer Appellee AEGIS Electric & Gas International Services Limited ("AEGIS"). AEGIS brought this action to resolve the legal issue of whether AEGIS, as insurer, has a duty to defend or indemnify its insured ECI in an underlying state court lawsuit brought by a former tenant against ECI. In that lawsuit, the plaintiff—Roberson—was a former tenant at an apartment complex managed by ECI. Roberson's state court complaint alleged that ECI had wrongfully withheld the security deposits of current and former tenants, in violation of Georgia's security deposit law, O.C.G.A. § 44-7-35(c).

In the instant action, the district court concluded that insurer AEGIS has no duty to defend its insured ECI in the underlying lawsuit and thus no duty to indemnify ECI for any damages resulting from that lawsuit. The district court based its conclusion on two fundamental rulings: (1) none of the relief requested in the underlying lawsuit—or provided for in the applicable Georgia statute— qualified as a "covered loss" under the terms of the policy issued by AEGIS, which explicitly carved out certain types of relief from the definition of "Loss"; and

2

(2) AEGIS did not waive those carve-outs when it failed to raise that defense until it filed the instant declaratory judgment action.

On appeal, ECI contends both of these determinations were erroneous, and so too the district court's grant of summary judgment in AEGIS's favor. After review, and with the benefit of oral argument, we reverse the district court's grant of summary judgment and conclude that AEGIS has a duty to defend ECI in the underlying state court lawsuit against it because that action and certain relief sought, if proved, would constitute a covered "Loss" under the insurance policy.

## I. FACTUAL BACKGROUND

This case concerns an underlying state court lawsuit in which AEGIS declined to defend or indemnify ECI. First, we briefly summarize the terms of the policy agreement between AEGIS and ECI and the state court proceedings. Next, we discuss the instant declaratory judgment action.

## A.    The Policy

Based in Atlanta, Georgia, ECI is a company that manages multiple apartment properties in the state of Georgia. In 2016, ECI purchased a "Real Estate Services Professional Liability Insurance Policy" (the "Policy") which was underwritten by AEGIS. The Policy limits liability to $1 million per claim and in the aggregate and covers a Policy Period of July 1, 2016, through July 1, 2017.

The Policy provides, in relevant part, that "[t]he Insurers [AEGIS] will pay on behalf of the **Insured** [ECI] all sums in excess of the Deductible amount . . . which the **Insured** shall become legally obligated to pay as **Loss** . . . resulting from **Claims** first made against the **Insured** during the **Policy Period** as a result of a **Wrongful Act** by the **Insured**."  The Policy further states that AEGIS, as the insurer, has the "duty to defend an **Insured** against any **Claim** that is covered by this Policy," though it has "no duty to defend an **Insured** against any **Claim** to which this Policy does not apply."

The Policy defines "Claim(s)" to mean "any civil action, suit, proceeding, or written demand for money or Professional Services received by any **Insured** seeking to hold the **Insured** responsible for **Loss** as a result of an alleged **Wrongful Act** committed by any **Insured**."[1]  Thus, "any civil action" that does not seek to hold the insured ECI responsible for a "Loss" under the Policy does not create a duty to defend on the part of the insurer AEGIS.

In turn, the Policy defines "Loss" as follows:

> **"Loss"** means a compensatory monetary amount for which the **Insured** may be held legally liable, including judgments (inclusive of any pre-judgment or post-judgment interest), awards, or settlements negotiated with the prior approval of the Insurers, but shall not include:

---

[1]There is no contention here that ECI's alleged wrongdoing—that is, its alleged violation of Georgia's security deposit statute—does not constitute a "Wrongful Act" under the terms of the Policy.  We therefore do not discuss the Policy's definition of this term.

a) <u>any disgorgement, return, withdrawal, restitution or reduction of any sums which are or were in the possession or control of any</u> **Insured**, or any amounts credited to any **Insured's** account;

b) fines, sanctions, taxes, penalties or awards deemed uninsurable pursuant to any applicable law;

c) punitive, exemplary, <u>treble damages</u> or <u>any other damages resulting from the multiplication of compensatory damages</u>; [or]

d) <u>equitable relief</u>, or fees, costs or expenses incurred by the **Insured** to comply with any such equitable relief.

(emphasis added).

## B.    The Underlying State Court Lawsuit

In May 2017 (during the Policy Period), Nichon Roberson filed a putative class action lawsuit against ECI and others in DeKalb County State Court. Plaintiff Roberson alleged that Defendant ECI systematically violated Georgia's security deposit statute by wrongfully withholding (in whole or in part) her security deposit and the security deposits of other current and former tenants of apartment complexes managed by ECI.  Specifically, Roberson alleged that ECI failed to provide departing tenants, within three days of termination of occupancy, with a list of damages that justified withholding all or part of a tenant's security deposit.[2]

---

[2]Georgia's security deposit statute provides, in relevant part, that "[w]ithin three business days after the termination of the residential lease and vacation of the premises . . . the landlord or his or her agent shall inspect the premises and compile a comprehensive list of any damage done to the premises which is the basis for any charge against the security deposit."  O.C.G.A. § 44-7-

The remedies for violating the statute are listed in O.C.G.A. § 44-7-35, which provides, in relevant part:

> Any landlord who fails to return any part of a security deposit which is required to be returned to a tenant pursuant to this article shall be liable to the tenant in the amount of three times the sum improperly withheld plus reasonable attorney's fees; provided, however, that the landlord shall be liable only for the sum erroneously withheld if the landlord shows by the preponderance of the evidence that the withholding was not intentional and resulted from a bona fide error which occurred in spite of the existence of procedures reasonably designed to avoid such errors.

O.C.G.A. § 44-7-35(c) (emphasis added).

In her complaint, Roberson purported to represent a class made up of Georgia citizens: (1) "who had an agreement for the rental of real property with ECI"; (2) "who had all or some of their security deposit not returned"; and (3) "for whom Defendants did not provide . . . a comprehensive list of any damage done to the premises," as required by Georgia law. Roberson Compl. at 6. As the result of Defendant ECI's alleged statutory violations, Plaintiff Roberson's complaint sought, individually and on behalf of the putative class, the following relief:

(a)  An order certifying the Class . . . [and] appointing [Roberson] as the representative of the Class . . . ;

(b)  A damages award for [Roberson] and each Class Member in the amount of three times the unlawfully withheld security deposit pursuant to O.C.G.A. §§ 44-7-33 and 44-7-35;

---

33(b)(1). Any landlord who fails to compile such a list and make it available to the tenant "shall not be entitled to retain any portion of a security deposit." O.C.G.A. § 44-7-35(a)(3).

6

(c)    Injunctive or declaratory relief to prevent future violations of Georgia's security deposit law;

(d)    An award of reasonable attorney fees to [Roberson] and each Class Member pursuant to O.C.G.A. § 44-7-35; and

(e)    Such further and other relief as the Court deems reasonable and just.

Id. at 13.

## C.    ECI Notifies AEGIS of the Claim

On March 9, 2017, ECI gave timely notice of Roberson's "Claim" to AEGIS in accordance with the Policy and requested coverage.[3]  In April 2017, AEGIS, through its claims manager, notified ECI via email that it was denying coverage. The only ground for denying coverage, cited in the email, was that "[t]he Lawsuit's allegations and relief demanded . . . concern 'the gaining in fact of personal profit or advantage to which the Insured is not legally entitled,' as well as a dispute regarding ECI's fee."[4]

## D.    AEGIS Formally Denies Coverage

---

[3]Originally, Roberson filed suit in Fulton County Superior Court in February 2017, but her complaint was never properly served on ECI.  As a result, the complaint was dismissed in May 2017 for failure to prosecute.  The same day the Fulton County lawsuit was dismissed, Roberson filed the above-discussed lawsuit in DeKalb County State Court.  Despite Roberson's failure to perfect service, ECI learned of the February 2017 Fulton County lawsuit and notified AEGIS on March 9, 2017.

[4]The Policy states that it "does not apply to any **Claim** based upon, arising out of, directly or indirectly, or in any way involving . . . the gaining in fact of any personal profit or advantage to which the **Insured** is not legally entitled, or out of any disputes involving the **Insured's** fees or charges."  AEGIS has since abandoned this basis for denying coverage.

About a month later, on May 3, 2017, AEGIS, again through its claims manager, sent a formal follow-up letter that acknowledged receipt of the claim and asserted that "this matter does not fall within the coverage of the Policy," and that "[n]either a duty to defend nor a duty to pay damages exists."  After quoting relevant portions of the Policy, AEGIS's May 3 letter identified two broad grounds for the denial of coverage.  First, the letter reiterated that Roberson's allegations concerned "the gaining in fact of personal profit or advantage to which the Insured is not legally entitled, as well as a dispute regarding ECI's fee."

Next, and as particularly relevant here, AEGIS's May 3 letter asserted that several of Roberson's "[i]tems of relief" were explicitly excluded from the Policy's definition of "Loss."  Specifically, the letter pointed to Roberson's requests for (1) class certification; (2) equitable relief to prevent future statutory violations; and (3) damages in the amount of three times the unlawfully withheld security deposit. The letter stated the first two items were excluded under subsection (d) of the Policy's definition of "Loss," while the third was excluded under subsection (c).[5]

---

[5]AEGIS's May 3 letter also noted that "Roberson alleges that ECI's actions were intentional," which would implicate the Policy's provision excluding from coverage any "intentional wrongdoing, fraud, dishonesty, criminal or malicious acts by the **Insured**." However, the letter further acknowledged that, under the terms of the Policy, that exclusion provision would only apply "[t]o the extent such intentional conduct is established via judgment or other final adjudication."  In other words, that provision would not provide a basis for refusing to defend in the first instance, though it might preclude indemnity down the road.

Notably, AEGIS did not, in its May 3 letter, invoke subsection (a) of the Policy's definition of "Loss," which excludes "any disgorgement, return, withdrawal, restitution or reduction of any sums which are or were in the possession or control of any **Insured**." However, the letter purported to reserve its "right to raise additional coverage issues should the need arise in the future."

## E.    Insured ECI Responds

Insured ECI responded, through counsel, asking its insurer AEGIS to reconsider its position. The majority of ECI's response was dedicated to rebutting AEGIS's contention that the claims themselves fell under one or more of the Policy's exclusions from coverage. ECI's response also addressed AEGIS's claim that none of the requested relief constituted a covered "Loss" as defined in the Policy. ECI argued that AEGIS's letter falsely assumed that "the Lawsuit only seeks equitable nonmonetary relief and treble damages." ECI noted that the Georgia statute limits a tenant's recovery to "the sum erroneously withheld" if the "withholding was not intentional and resulted from a bona fide error which occurred in spite of the existence of procedures reasonably designed to avoid such errors." See O.C.G.A. § 44-7-35(c). As a result, ECI pointed out, "the [c]ourt may not necessarily award treble damages and could limit relief to compensatory only."

9

Such purely compensatory damages would fall within the Policy's definition of "Loss."[6]

### F.    Insurer AEGIS Follows Up

Insurer AEGIS, through counsel, acknowledged it had "reviewed the request for reconsideration" and requested supplemental information about the property where Roberson had lived.  ECI provided the requested information and subsequently inquired several times into the status of AEGIS's decision regarding coverage.  Eventually (and apparently without definitively updating ECI as to the status of its coverage decision) AEGIS filed the instant declaratory judgment action in federal district court.

## II.  DISTRICT COURT PROCEEDINGS

### A.    AEGIS's Complaint

In September 2017, AEGIS initiated the instant action by filing a "Complaint for Declaratory Judgment," which included a single cause of action. AEGIS sought a declaratory judgment stating "[t]hat no coverage is afforded, no indemnity payments are due, and no duty to provide or pay for a defense for the claim under the Policy has arisen due to the application of the disgorgement/return

---

[6] Insured ECI also asserted that, under Georgia law, AEGIS was not permitted to reserve additional coverage defenses, citing Hoover v. Maxum Indemnity Co., 291 Ga. 402, 730 S.E.2d 413 (2012).  According to ECI, Hoover stands for the proposition that "[w]hen a third party claim is pending against its insured, a carrier cannot rely on boilerplate language in a notice reserving the right to assert any other defenses at a later date."

of sums carve-out and treble damages carve-out to the Policy's definition of 'Loss.'"

Insurer AEGIS's complaint pointed to the damages provision of the Georgia statute, which provides that a tenant would be entitled either to "three times the sum improperly withheld" or to "the sum erroneously withheld." See O.C.G.A. § 44-7-35(c). In either case, the complaint alleged, Roberson's requested remedy thus would fall outside the Policy's definition of "Loss," either because it constituted treble damages ("three times the sum improperly withheld") or because it constituted a disgorgement or return ("the sum erroneously withheld," i.e., the return of the security deposit). As to the disgorgement and return carve-outs— which insurer AEGIS had not previously raised—the complaint specifically alleged that the court-ordered return of Roberson's security deposit "would amount to a disgorgement or return of any sum which w[as] in the possession or control of ECI."

Insured ECI filed its answer and asserted counterclaims for breach of contract and declaratory judgment. Following discovery, AEGIS moved for summary judgment on both the duty to defend and the duty to indemnify, while ECI moved for partial summary judgment on the issue of whether AEGIS has a duty to defend ECI. In this regard, ECI argued that, even if the Policy did not include coverage for treble damages, the factfinder in the underlying litigation

11

potentially could find that ECI did not act intentionally, in which case ECI would be liable only for the withheld security deposit. ECI insisted that any "untrebled compensatory damages"—i.e., damages in the amount of the withheld security deposit—would constitute a covered "Loss" under the Policy. ECI also argued that any attorney's fee award that it might become obligated to pay under O.C.G.A. § 44-7-35(c) would, on its own, constitute a "Loss" under the Policy because it would be "a compensatory monetary amount for which [ECI] may be held legally liable." As to whether either of those amounts was otherwise excluded from the Policy's definition of "Loss" under the Policy's disgorgement or return carve-outs, ECI argued AEGIS had waived that carve-out by failing to raise it earlier as a basis for denying coverage.

## B.    The District Court's Decision

The district court granted AEGIS's motion for summary judgment on all claims and counterclaims and denied ECI's motion for partial summary judgment. The district court first concluded that the relief sought in the underlying Roberson litigation were not covered "Loss[es]" under the Policy, focusing on Roberson's requests for treble damages and equitable relief.

The district court acknowledged ECI's argument that Roberson would not be entitled to treble damages if ECI was found not to have acted intentionally, but the court concluded that "any issue of fact as to whether ECI will be found willful or

merely negligent cannot save ECI." This was because even "[a]ny non-multiplied damages—or the return of allegedly improperly withheld security deposits"— would be carved out from the Policy's definition of "Loss" under the Policy's exclusion of "any disgorgement, return, withdrawal, restitution or reduction of any sums which are or were in the possession or control of any Insured, or any amounts credited to any Insured's account."

The district court also rejected ECI's argument that AEGIS had waived the disgorgement and return carve-outs because it did not raise it until it filed the instant declaratory judgment action. The district court based its rejection of this argument on a distinction between coverage defenses and policy defenses, only the latter of which can be waived under the district court's reading of Georgia law.

Having found that none of Roberson's requested relief—or, indeed, any relief to which Roberson would be entitled under the Georgia statute—qualified as a "Loss" under the Policy, the district court concluded that AEGIS has no obligation to defend—and, as a result, no duty to indemnify—ECI in the Roberson litigation and entered judgment in AEGIS's favor.

### III. STANDARD OF REVIEW

We review a district court's decision to grant or deny summary judgment de novo. Cagle v. Bruner, 112 F.3d 1510, 1514 (11th Cir. 1997). Where, as here, the district court's summary judgment rulings "involve the interpretation and

application of the pertinent terms of [an] insurance contract[]," we likewise review de novo the district court's construction of the Policy. Elan Pharm. Research Corp. v. Emp'rs Ins. of Wausau, 144 F.3d 1372, 1374–75 (11th Cir. 1998). And because this federal action is based on diversity, Georgia's substantive law governs our interpretation of the Policy. See Great Am. All. Ins. Co. v. Anderson, 847 F.3d 1327, 1331 (11th Cir. 2017).

## IV. DISCUSSION

### A.    The Policy's Coverage: General Principles

"To determine whether an insurer owes its insured a duty to defend a particular lawsuit, Georgia law directs us to compare the allegations of the complaint, as well as the facts supporting those allegations, against the provisions of the insurance contract." Elan, 144 F.3d at 1375; see also City of Atlanta v. St. Paul Fire & Marine Ins. Co., 231 Ga. App. 206, 207, 498 S.E.2d 782, 784 (Ga. Ct. App. 1998) ("An insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured. We look to the allegations of the complaint to determine whether a claim covered by the policy is asserted." (citation omitted)). "[W]here the complaint filed against the insured does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit." St. Paul Fire & Marine, 231 Ga. App. at 207, 498 S.E.2d at 784.

14

In construing the Policy, we look first to its text, giving the terms used their "usual and common meaning." See Ga. Farm Bureau Mut. Ins. Co. v. Smith, 298 Ga. 716, 719, 784 S.E.2d 422, 424 (Ga. 2016) (quotation marks omitted). If we find the terms "explicit and unambiguous," we simply apply the terms as written, "regardless of whether doing so benefits the carrier or the insured." Id. (quotation marks omitted).

Under Georgia law, however, "exclusions from coverage sought to be invoked must be strictly construed," and "all ambiguities as to policy exclusions are interpreted in favor of coverage because the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms." Anderson, 847 F.3d at 1331–32 (quotation marks and alteration omitted). "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." St. Paul Fire & Marine, 231 Ga. App. at 207, 498 S.E.2d at 784.

ECI identifies two forms of relief Roberson sought pursuant to O.C.G.A. § 44-7-35(c), each of which constitutes a covered "Loss" under the Policy: (1) the unmultiplied amount Roberson would be entitled to as a result of ECI's alleged statutory violation—i.e., "the sum erroneously withheld"; and (2) attorney's fees. We address each alleged "Loss" in turn.

15

**B.      Return of Security Deposit: "The Sum Erroneously Withheld"**

As quoted earlier, O.C.G.A. § 44-7-35(c) provides that:

Any landlord <u>who fails to return any part of the security deposit which is required to be returned</u> to a tenant pursuant to this article <u>shall be liable</u> to the tenant <u>in the amount of</u> three times the <u>sum improperly withheld</u> plus attorneys' fees; provided, however, that the landlord shall be liable <u>only for the sum erroneously withheld</u> if the landlord shows by the preponderance of the evidence that the withholding was not intentional and resulted from a bona fide error which occurred in spite of the existence of procedures reasonably designed to avoid such errors.

(Emphasis added).  The parties do not appear to dispute that if Roberson were to receive an award "in the amount of three times the sum improperly withheld," the Policy's treble-damages carve-out would apply, at least as to the full multiplied amount.  However, whether Roberson would ultimately be entitled to that multiplied amount is a factual question—it turns on whether ECI's conduct was intentional.  If ECI establishes that any wrongful withholding of the security deposit "was not intentional" and "occurred in spite of the existence of procedures reasonably designed to avoid such errors," Roberson would be entitled only to "the sum erroneously withheld."  <u>See</u> O.C.G.A. § 44-7-35(c).

Accordingly, if this unmultiplied amount—"the sum erroneously withheld"—was recovered by Roberson, and if it would constitute a "Loss" under the policy, then ECI could incur coverable losses, and that possibility is enough to require AEGIS to defend the lawsuit.  <u>See</u> <u>St. Paul Fire & Marine</u>, 231 Ga. App. at

16

207, 498 S.E.2d at 784.  AEGIS therefore maintains a duty to defend ECI unless it is clear under the terms of the Policy that the return of any wrongfully withheld security deposit funds ("the sum erroneously withheld") is excluded from the Policy's definition of "Loss."  AEGIS insists any such amount would be excluded from the Policy's definition of "Loss" because it would constitute a "disgorgement" or "return" of "sums which are or were in the possession or control of" ECI.

As quoted earlier from the Policy, "Loss" means "a <u>compensatory monetary amount</u> for which the **Insured** may be held legally liable, including judgments[,] . . . awards, or settlements[,] . . . <u>but shall not include</u>:  (a) <u>any disgorgement, return,</u> withdrawal, restriction or reduction <u>of any sums which are or were in the possession or control of any</u> **Insured** . . . ."  (Emphasis added).  To be a covered "Loss" in the first place, the liability must already be "a compensatory monetary amount for which the **Insured** may be held legally liable."  Therefore, any amounts that would be carved out from the Policy's definition of "Loss" would necessarily have to be "compensatory monetary amount[s]" in the first place, otherwise there would be no need to exclude them.  Thus, our inquiry becomes whether the "compensatory monetary amount" in the amount of "the sum erroneously withheld" by the landlord is a "disgorgement" or a "return" of "sums which are or were in the possession or control" of the Insured ECI.

17

ECI argues that the relief sought cannot constitute a disgorgement because disgorgement is an equitable remedy.  However, we need not resolve that issue because the carve-out also excludes from the definition of "Loss" monetary relief constituting "any . . . return, withdrawal, . . . or reduction of any sums which are or were in the possession or control" of ECI.  For the reasons explained below, we conclude that the damages representing the return of the security deposit would constitute "any . . . return" of sums "in the possession or control" of ECI and would therefore be excluded from the Policy's definition of "Loss."

Giving, as we must, unambiguous policy terms their ordinary dictionary meaning, see Michna v. Blue Cross & Blue Shield of Ga., Inc., 288 Ga. App. 112, 114, 653 S.E.2d 377, 380 (Ga. Ct. App. 2007), we must consider "return" to mean "[t]o revert to a former owner" or "[t]o give back to the owner," see Return, The American Heritage Dictionary of the English Language (3d ed. 1996).

Under Georgia law, a landlord must deposit a tenant's security deposit in an escrow account, and the "security deposit shall be held in trust for the tenant by the landlord or such landlord's agent except as provided in section 44-7-34."  Ga. Code. Ann. § 44-7-31.  Georgia's security deposit law thus operates under the premise that a tenant's security deposit remains the tenant's property, subject to the landlord's rights to retain or withhold the deposit.

18

Section 44-7-33 requires the landlord to inspect, prepare a final damage list, and permit a tenant inspection within certain times after lease termination, see id. § 44-7-33(b), and section 44-7-34 governs the timing and procedure for a landlord to return or make claims against a tenant's security deposit, see id. § 44-7-34(a).  If a landlord fails to compile and make available the final damage list required by section 44-7-33(b), the landlord "shall not be entitled to retain any portion of a security deposit."  Id. § 44-7-35(a)(3).  Similarly, if a landlord fails to provide each of the written statements within the time periods specified in sections 44-7-33 and 44-7-34, such failure "shall work a forfeiture of all the landlord's rights to withhold any portion of the security deposit."  Id. § 44-7-35(b).  Finally, section 44-7-35(c) provides that "[a]ny landlord who fails to return any part of a security deposit which is required to be returned to a tenant" is liable to the tenant in the amount of "the sum erroneously withheld" and potentially treble damages and attorney's fees.  Id. § 44-7-35(c).

Consistent with this statutory scheme, Roberson alleges that, pursuant to section 44-7-35(b), ECI forfeited its right to retain her security deposit because it failed to provide Roberson the statutorily mandated final damages list as part of the post-termination procedure.  According to Roberson, ECI is therefore a "landlord who fail[ed] to return any part of a security deposit which is required to be returned to a tenant," and she claims that under section 44-7-35(c), she can recover from

19

ECI either "the sum erroneously withheld" or three times that amount plus attorney's fees.

As noted, section 44-7-35(b) imposes a forfeiture of a landlord's rights to make a claim against a security deposit. In this context, "forfeiture" means the "loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty." Forfeiture, Black's Law Dictionary (11th ed. 2019). That provision, coupled with the tenant's continued rights in the security deposit under section 44-7-31, demonstrates that an award against ECI for "the sum erroneously withheld" constitutes a "return" of Roberson's money back to her. Therefore, if ECI ultimately is required to transfer any part of the security deposit back to Roberson under section 44-7-35(c)—as demanded by Roberson in her lawsuit— such a transfer would fall within the scope of the Policy's return carve-out.[7]

---

[7] Our dissenting colleague states that "O.C.G.A. § 44-7-35(c) makes the landlord liable for damages in the amount of the security deposit withheld, allowing the tenant to 'replace' the missing deposit with any of the landlord's assets." Dissent at 25. The dissent argues the penalty provision in § 44-7-35(c) "does not order the return of the deposit, but sets statutory damages for when the landlord fails to return the deposit." Id. at 27. This argument fails to recognize that the critical language here is the text of the "Loss" definition in the Policy. To be a covered "Loss" in the first place, the sum must be "a compensatory monetary amount for which the **Insured** may be held legally liable." The carve-outs then exclude a subset of those compensatory monetary amounts, including those that constitute "any disgorgement" or "any . . . return . . . of any sums which are or were in the possession or control of any **Insured**." That the statute sets the compensatory damages—for failure to return any part of a security deposit required to be returned—as "the sum erroneously withheld," if anything, underscores that the "compensatory monetary amount" for which the landlord is held liable is a "return" of the security deposit "in the possession" of ECI.

We therefore conclude that an award of the allegedly wrongfully withheld security deposit would not constitute a "Loss" under the Policy.[8] But this conclusion does not end our analysis, and we now turn to ECI's argument that any attorney's fees that it might become obligated to pay as part of the judgment in the Roberson litigation would also fall within the Policy's definition of "Loss."

## C.    Attorney's Fees

The Policy clearly obligates AEGIS to cover "all sums in excess of the Deductible amount . . . which the **Insured** shall become legally obligated to pay as **Loss**," and further defines "Loss" to include a "compensatory monetary amount for which the **Insured** may be held legally liable, including . . . awards." Thus, the Policy obviously contemplates coverage for any award of attorney's fees unless, as AEGIS argues, any such fees are otherwise explicitly excluded from the Policy's definition of "Loss."

---

[8] ECI also argues that AEGIS waived the disgorgement and return carve-outs by failing to initially raise them as bases for denying coverage. It is undisputed that AEGIS did not assert that the return of any security deposit withheld in contravention of O.C.G.A. § 44-7-33 would constitute a disgorgement or a return until AEGIS filed the instant declaratory judgment action. However, the disgorgement and return carve-outs are properly characterized as coverage defenses. And under Georgia law, such defenses cannot be waived because the doctrines of waiver and estoppel "may not be used to enlarge the coverage contained in a policy of insurance." Sargent v. Allstate Ins. Co., 165 Ga. App. 863, 865, 303 S.E.2d 43, 45–46 (Ga. Ct. App. 1983) (quotation marks omitted). ECI points to certain broad language in a more recent Georgia Supreme Court decision, Hoover v. Maxum Indemnity Co., 291 Ga. 402, 730 S.E.2d 413 (2012). But the specific defense at issue in Hoover was a policy defense of the sort Georgia courts have long held is subject to waiver, and there is no indication in Hoover that the Georgia Supreme Court intended to upend the longstanding rule that an insurer cannot waive coverage defenses.

21

As laid out above, O.C.G.A. § 44-7-35(c) states that a landlord who fails to return all or part of a tenant's security deposit in violation of Georgia's security-deposit statute is liable for "three times the sum improperly withheld plus reasonable attorney's fees."  O.C.G.A. § 44-7-35(c).  Notably, the statute does not provide for an award of attorney's fees where the landlord did not act intentionally, since a tenant would be entitled "only" to "the sum erroneously withheld" under such circumstances.  Id.

The Policy's treble-damages carve-out, in turn, applies to "any other damages resulting from the multiplication of compensatory damages."  AEGIS characterizes any potential award of attorney's fees as additional "damages resulting from the multiplication of compensatory damages."  We disagree.

First, while it is true that an award of attorney's fees under the statute, as a practical matter, rises and falls with the award of treble damages, it does not directly flow from those damages.  Rather, both the treble damages and the attorney's fees flow from a finding that that the landlord acted intentionally and in the absence of procedures designed to prevent the wrongful withholding of security deposits.  See O.C.G.A. § 44-7-35(c).

Second, as this Court has noted in the past in construing an insurance policy, "[u]nder Georgia law, attorneys' fees, even where recoverable, are not typically included within the ordinary species of damages."  Alea London Ltd. v. Am. Home

22

Servs., Inc., 638 F.3d 768, 780 (11th Cir. 2011) ("That 'attorneys' fees' would be subsumed within the Policy's reference to 'damages' is not consistent with a plain, ordinary-meaning reading of the Policy.").

Accordingly, we conclude that any award of attorney's fees under O.C.G.A. § 44-7-35(c) would constitute a potential "Loss" under the Policy, and AEGIS therefore maintains its duty to defend ECI. See St. Paul Fire & Marine, 231 Ga. App. at 207, 498 S.E.2d at 784.

## D.    Duty to Indemnify

We decline to offer any opinion as to whether AEGIS, in addition to its duty to defend, has any duty to indemnify ECI. The district court concluded there was no duty to indemnify, but that conclusion simply flowed from its conclusion that there was no duty to defend. See Shafe v. Am. States Ins. Co., 288 Ga. App 315, 317, 653 S.E.2d 870, 873 (Ga. Ct. App. 2007) ("[A]n insurer's duty to defend is broader than its duty to indemnify."). Under Georgia law, the duty to defend and the duty to indemnify are "separate and independent obligations." Nationwide Mut. Fire Ins. Co. v. Somers, 264 Ga. App. 421, 424, 591 S.E.2d 430, 433 (Ga. Ct. App. 2003) (quotation marks omitted).

We therefore leave for a later date the independent question of whether AEGIS must ultimately indemnify ECI for any particular liability it might incur as a result of the ongoing lawsuit against it. See Trizec Props. v. Biltmore Constr.

23

Co., 767 F.2d 810, 813 (11th Cir. 1985) (affirming a district court's conclusion that a complaint triggered an insurer's duty to defend and declining to address any duty to indemnify).  For now, it is sufficient for us to say that, under the terms of the Policy, AEGIS maintains its duty to defend ECI in the underlying state court lawsuit.

## V.  CONCLUSION

For the reasons discussed above, we reverse the district court's order granting AEGIS's motion for summary judgment and denying ECI's partial motion for summary judgment insofar as it concluded AEGIS has no duty to defend ECI in the state court Roberson litigation, and remand for additional proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

WILSON, Circuit Judge, concurring in part and dissenting in part:

If, on a sunny afternoon, you loaned your friend a pair of sunglasses and asked her to return them tomorrow, you would expect your friend to return that pair of sunglasses. You would not expect your friend to hand you a different, yet identical pair of sunglasses, because that would be a replacement pair, not a returned pair. Georgia law recognizes a similar distinction—a distinction that the majority erases. It holds today that O.C.G.A. § 44-7-35(c) compels a landlord to "return" an erroneously withheld security deposit, but the law does no such thing; it applies when the landlord does not return the security deposit. Then it makes the landlord liable for statutory damages in the amount of the withheld security deposit, allowing the tenant to replace the missing deposit with any of the landlord's assets. Respecting this distinction in Georgia's chosen penalty scheme, I would hold that the return carve-out does not bar coverage for Roberson's claim.[1]

---

[1] I agree with the rest of the majority's opinion, save for two points. First, the majority punts on whether the disgorgement carve-out bars coverage. I would hold that it does not for two reasons. One, disgorgement is a form of return. *See Tull v. United States*, 481 U.S. 412, 424 (1987) ("An action for disgorgement . . . . is a remedy only for restitution—a more limited form of penalty than a civil fine. Restitution is limited to restoring the status quo and ordering the return of that which rightfully belongs to the purchaser or tenant." (internal quotation mark omitted)). As I explain below, O.C.G.A. § 44-7-35(c) does not order the return of anything—it awards compensatory damages. Two, disgorgement is "an equitable remedy intended to prevent unjust enrichment." *S.E.C. v. Levin*, 849 F.3d 995, 1006 (11th Cir. 2017). O.C.G.A. § 44-7-35(c), in contrast, provides not an equitable remedy but a legal remedy for damages. So the disgorgement carve-out does not apply.

Second, the majority holds in footnote eight that AEGIS did not waive its coverage defenses. Though you wouldn't know it from the majority's brief analysis, the waiver issue decided in that footnote is a vexing and disputed issue of Georgia law. *See Century Communities of Ga., LLC v.*

25

The return carve-out bars coverage for a judgment mandating the "return . . . of any sums which are or were in the possession or control of any Insured, or any amounts credited to any Insured's account."  Like the majority, I agree that we must apply the plain meaning of "return," which means "to revert to a former owner" or "to give back to the owner."  Majority Op. at 18 (alterations accepted).  So this carve-out applies whenever an insured must revert or give back sums that belong or belonged to someone else but are or were in the insured's possession.

A review of Georgia's security-deposit scheme shows why this carve-out does not apply to damages awarded under O.C.G.A. § 44-7-35(c).  To start, O.C.G.A. § 44-7-31 requires a landlord to put a tenant's security deposit in escrow.  O.C.G.A. § 44-7-33 then governs the landlord's notice obligations.  And O.C.G.A. § 44-7-34, titled "Return of security deposit," governs the landlord's obligations for returning the deposit.  Finally, O.C.G.A. § 44-7-35 provides "Remedies for noncompliance" with these statutes, and it has two key parts.  The first part says that if a landlord violates these statutes, it "shall not be entitled to retain any portion of a security deposit" or its errors will otherwise "work a forfeiture" on both the landlord's right to withhold the security deposit and its right to sue a

_____

*Selective Way Ins. Co.*, 2019 WL 7491504 (N.D. Ga. Oct. 25, 2019) (describing the issue and the many ways courts have decided it).  Were it me, I would assume that AEGIS did not waive its coverage defenses, hold that none of them apply anyway, and thus avoid ruling on an open question that is better left for the state courts of Georgia.

26

tenant for damages to the premises. *See* O.C.G.A. § 44-7-35(a)–(b). Summed up, the first part of O.C.G.A. § 44-7-35 describes the situations in which the law strips the landlord of its right to withhold the security deposit.

The second part—the part at issue here—describes the penalty the landlord faces if, after losing its right to withhold the security deposit, it still fails to return the security deposit. *See id.* § 44-7-35(c). The provision says that "[a]ny landlord <u>who fails to return</u> any part of a security deposit which is required to be returned to a tenant pursuant to this article <u>shall be liable to the tenant in the amount of . . . the sum erroneously withheld</u>." *Id.* (emphasis added). Subsection (c) thus says that if, after losing its right to withhold the security deposit, the landlord still fails to return the security deposit, the landlord becomes liable for statutory damages <u>in the amount of</u> the security deposit. The statute merely borrows the amount of the deposit withheld as the amount of damages that the statute awards; it does not order the return of the security deposit that was held in escrow under O.C.G.A. § 44-7-31.

Indeed, the presence of the phrase "[a]ny landlord who fails to return" the deposit makes clear that this penalty provision does not order the return of the deposit, but sets statutory damages for when the landlord fails to return the deposit. *See* O.C.G.A. § 44-7-35(c). Because if the legislature had meant to order the return of the security deposit, it would have said so. It would not have written that

27

"[a]ny landlord who fails to return" the security deposit "shall be liable to the tenant in the amount of . . . the sum erroneously withheld"; it would have written that "[a]ny landlord who fails to return" the security deposit shall return the security deposit.

It makes sense why Georgia rejected a return-based penalty and instead chose a damages-based penalty.  By making the landlord liable for damages in the amount of the deposit (rather than ordering the return of certain funds), the statute arms the tenant with more ways to recover a judgment for the landlord's violation. The tenant is not limited to the deposit held in escrow (or even to money at all), but can recover immediately from any of the landlord's assets, as any judgment creditor could.  For this reason, the insured here, were it to lose the Roberson claim, would not need to revert or give back anything; it would be liable at law for compensatory damages in the amount of the security deposit withheld.  This wording reflects a conscious choice by the state legislature to expand the tenant's remedy, and we, as a federal court sitting in diversity, should respect its determination.  *See Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1572 (11th Cir. 1993) ("[A]s a federal court, we must be particularly reluctant to rewrite the terms of a state statute." (emphasis omitted)).

A practical analysis of the treble-damages clause in O.C.G.A. § 44-7-35(c) also confirms that this reading is right.  That clause says that Roberson will receive

28

an award of "three times the sum improperly withheld" if ECI intentionally withheld the security deposit. *See* O.C.G.A. § 44-7-35(c). Said differently, ECI becomes statutorily liable for damages three times the amount of the security deposit withheld if it engaged in intentional misconduct. We wouldn't say, in that event, that a third of the treble-damages award constitutes a "return" of the security deposit. We would simply say that ECI is liable for <u>treble damages</u>.

Also consider Roberson's potential judgment. If Roberson establishes that ECI wrongfully withheld a security deposit, but that it did so only negligently, the judgment in the case will not say "Judgment for Plaintiff, return X dollars." The judgment will say "Judgment for Plaintiff <u>in the amount of X dollars</u>"—an amount recoverable from anywhere, from any asset that a judgment creditor might reach. That distinction makes all the difference here, as it underscores that O.C.G.A. § 44-7-35(c) provides only a statutory remedy for damages, and so the return carve-out does not apply.

The majority responds to these points in a footnote. *See* Majority Op. at 20 n.7. It argues that I "fail[] to recognize" that the policy's definition of "loss" includes only "compensatory monetary amount[s]." It follows then, says the majority, that the loss carve-outs merely "exclude a subset" of "compensatory monetary amount[s]," and thus the policy's definition of "return" can apply to an

29

award of compensatory damages in the amount of "the sum erroneously withheld." For three reasons, that argument is simply wrong.

First off, the carve-outs do not "exclude a subset" of what would typically constitute "compensatory monetary amount[s]." The third carve-out, for example, excludes coverage for "punitive, exemplary, treble damages or any other damages resulting from the multiplication of compensatory damages." Punitive damages are not compensatory. *See Bogle v. McClure*, 332 F.3d 1347, 1362 (11th Cir. 2003). Neither are exemplary damages. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580 (1996). So the majority's basic premise is wrong—the carve-outs do not remove from "loss" what was once included. They merely remove all doubt that the policy excludes some classes of liability from coverage.

Second, the majority's argument fails even if we accept its flawed reasoning. Its premise forgets that the return carve-out, at most, excludes only specific remedies through which the insured pays for liability. For instance, even if the remedy of disgorgement could compensate the tenant for its missing security deposit, the policy's disgorgement carve-out would bar coverage only because it bars sums paid through the remedy of disgorgement. So too with the return carve-out: If the statute ordered a return of the security deposit to compensate the tenant for its loss, the carve-out would bar coverage. But O.C.G.A. § 44-7-35(c) does not order a return of the deposit. It orders the landlord to pay damages in the amount

30

of the security deposit withheld to compensate the tenant for its loss.  Simply put, the return carve-out does not bar coverage for "compensatory monetary amount[s]" paid through the remedy of a damages award.  Because O.C.G.A. § 44-7-35(c) compensates the tenant with a damages award, the carve-out can't apply even under the majority's view.

Third, even if there were reasonable debate about whether the policy's definition of "return" covers a statute that awards damages in the amount of a sum erroneously withheld, Georgia law doubly compels us to decide that debate for the insured.  Under Georgia law, we must construe policy exclusions narrowly, *Alley v. Great Am. Ins. Co.*, 287 S.E.2d 613, 616 (Ga. App. 1981), and we must construe ambiguous terms in favor of coverage, *Hays v. Georgia Farm Bureau Mut. Ins. Co.*, 722 S.E.2d 923, 926 (Ga. App. 2012).  Few would say that applying the return carve-out to O.C.G.A. § 44-7-35(c) is a clear-cut call; for it to apply, one must accept that a statutory damages award is really a returned security deposit.  That logic requires some imagination at best, rendering the exclusion ambiguous at least.  And when faced with an ambiguous policy exclusion, Georgia law tells us to give the tie to the insured.  *See Alley*, 287 S.E.2d at 616; *Hays*, 722 S.E.2d at 926.  I would follow that instruction.

To close, I'll note that though the majority's mistake may not matter today, it will almost definitely matter tomorrow, at the indemnity phase.  The reason that

31

it doesn't matter now is that we have held that AEGIS has a duty to defend because the policy covers Roberson's claim for attorney's fees.  As a result, AEGIS must defend the entire suit, no matter if the policy provides a defense for the merits of Roberson's claim.  But if Roberson wins at trial and ECI becomes liable for statutory damages in the amount of the withheld security deposit, the majority's determination that the return carve-out bars coverage will relieve AEGIS of its duty to indemnify ECI for the loss.  That will leave ECI on the hook for class-action damages, despite clear coverage under its insurance policy.

I respectfully dissent.