[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-14697

Non-Argument Calendar

_____

CENTURY COMMUNITIES OF GEORGIA, LLC,

Plaintiff-Appellant,

*versus*

SELECTIVE WAY INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:18-cv-05267-ODE

_____

Before WILSON, LAGOA, and MARCUS, Circuit Judges.

PER CURIAM:

Century Communities of Georgia, LLC ("Century") appeals from the district court's order granting summary judgment in favor of insurer Selective Way Insurance Company ("Selective"), in a coverage dispute raising claims under Georgia law for breach of contract and for bad faith arising out of Selective's failure to defend Century in a tort lawsuit involving property damage at one of its housing developments. On appeal, Century argues that the district court erred by allowing Selective to rely on a defense to coverage that it failed to raise in its initial letter denying coverage. After careful review, we affirm.

## I.

The relevant background is this. Century owns land in Sugar Hill, Georgia. In 2016, Century began turning the property into a residential subdivision and entered into a subcontractor agreement with Magnum Contracting, LLC ("Magnum"), whereby Magnum would provide site work services for the project. Century says that in the subcontractor agreement, Magnum agreed to add Century as an additional insured on Magnum's Commercial General Liability Policy (the "Policy") with its insurer, Selective.

In 2017, legal action was filed against Century, Magnum, and others under the case captioned *David R. Bowen, et al. v. Century Communities of Georgia, LLC, et al.*, in the Superior Court of

Gwinnett County, Georgia (the "*Bowen* suit"). The plaintiffs in the *Bowen* suit alleged that "the grading of the subdivision property prior to the implementation of an erosion control program was the cause of [a] runoff of water, sediment, silt, mud, and other pollutants onto their property."

On August 3, 2018, Century demanded defense and indemnification of the underlying *Bowen* suit by Magnum pursuant to the Policy issued by Selective. On September 11, 2018, Selective denied coverage without asserting a reservation of rights. Selective provided two reasons for its decision to decline Century's demand: (1) Selective was unclear whether "the property damage alleged by the Bowens was caused by Magnum's work" and (2) "the complaint includes allegations against all defendants." On September 13, 2018, Century responded to Selective's September 11 denial letter to explain its belief that (1) "Selective had a duty to defend Century"; (2) "Selective's alleged defenses to coverage lacked factual and legal merit"; and (3) "Selective's actions constituted bad faith under O.C.G.A. § 33-4-6."

Century filed this action on November 16, 2018, bringing claims under Georgia law for breach of Selective's contractual duty to defend and bad faith. In its answer, Selective admitted to providing only two reasons for denying coverage in its September 11 letter, but went on to list several other reasons for denying coverage, one being the Policy's Pollution Exclusion. The Pollution Exclusion excludes from coverage "property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage,

migration, release or escape of pollutants." The Policy defines "pollutant" as "any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

When Selective filed a motion for summary judgment in this suit and argued, among other things, that it had no duty to defend based on the Policy's Pollution Exclusion, Century responded that Selective had waived its ability to assert the Pollution Exclusion as a defense by not including it as a reason for denial in its denial letter. The district court disagreed and held, under Georgia law, that "[a] party may . . . assert a defense not listed in its denial letter, subject to the doctrines of waiver and estoppel." It then found that Selective did not waive the defense because Century had sufficient notice of it. As for whether the Pollution Exclusion applied, the district court said that "[b]ecause 'water runoff, sediment, silt, and other pollutants' are considered pollutants under the terms of the Selective Policy, property damage resulting therefrom is excluded from coverage." Since Century had no coverage under the Policy, the district court granted summary judgment in favor of Selective on Century's breach of the duty to defend and bad-faith claims.

This timely appeal follows.

## II.

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the party

opposing the motion. *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a factual dispute is genuine, we must consider whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Peppers v. Cobb County*, 835 F.3d 1289, 1295 (11th Cir. 2016) (quotations omitted). "[W]e may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below." *Aaron Priv. Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1335 (11th Cir. 2019) (quotations omitted).

## III.

The dispute in this appeal centers on whether Selective waived its ability to assert the Pollution Exclusion in the Policy as a defense against coverage by not including it as a reason for denial in its initial letter denying coverage. Based on our recent interpretation of Georgia case law, we conclude that Selective retained the ability to rely on the Pollution Exclusion to deny coverage.

Under Georgia law, "[a]n insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured." *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 498 S.E.2d 782, 784 (Ga. Ct. App. 1998). While "an insurer must provide a defense against any complaint that, if successful, might potentially or arguably fall within the policy's coverage," there is no duty to defend against allegations

expressly excluded under the insurer's policy. *Elan Pharmaceutical Research Corporation v. Employers Insurance of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998); *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997) (holding that there is no duty to defend when a policy exclusion unambiguously applies).

Whether Selective could rely on the Pollution Exclusion to deny coverage -- and thereby refuse to defend Century in the *Bowen* suit -- even though Selective neglected to mention the exclusion in its original letter denying coverage, touches on some recent developments in the case law. In Georgia, "[t]he longstanding general rule is that neither waiver nor estoppel can be used to create liability not created by an insurance contract and not assumed by the insurer under the terms of the policy." *Andrews v. Georgia Farm Bureau Mut. Ins. Co.*, 487 S.E.2d 3, 4 (Ga. Ct. App. 1987). However, broad language in a 2012 case of the Georgia Supreme Court may have called that rule into question. *See Hoover v. Maxum Indem. Co.*, 730 S.E.2d 413 (Ga. 2012).

In *Hoover*, the Georgia Supreme Court addressed whether an insurer could deny coverage while still reserving its right to argue a defense based on untimely notice. The court outlined three options for an insurer when a lawsuit is pending against its insured: (1) "the insurer can defend the claim, thereby waiving its policy defenses and claims of non-coverage"; (2) "the insurer can deny coverage and refuse to defend, leaving policy defenses open for future litigation"; or (3) "the insurer can defend under a reservation of rights." *Id.* at 416. The court was clear, however, that the insurer

19-14697               Opinion of the Court                    7

"cannot both deny a claim outright and attempt to reserve the right to assert a different defense in the future." *Id.*  Having found the insurer's purported reservation of rights improper in that case, the court in *Hoover* then addressed the issue of waiver and found that the insurer's "continued failure to fairly inform [the insured] of its intention to raise a defense related to untimely notice" meant that it had waived the defense.  *Id.* at 418.

In district court, the parties to this appeal disputed the meaning of *Hoover* and whether it mandates waiver if an insurer does not raise a defense in its denial letter.  The parties appeared to agree that there were three possible interpretations of its meaning: (1) after *Hoover*, *all* defenses not asserted in an insurer's denial letter are waived or estopped; (2) *Hoover* did not change existing Georgia law that waiver or estoppel cannot create coverage that does not exist under the policy; or (3) after *Hoover*, the failure to include a defense in a denial letter does not render it automatically waived, but rather leaves the question of whether to consider the defense open for future litigation.  The district court adopted the third interpretation and held that Selective did not waive the Pollution Exclusion because Century had sufficient notice of it.

Since the district court ruled in this case, however, our Court has addressed *Hoover* and its implications.  *See AEGIS Elec. & Gas Int'l Servs. Ltd. v. ECI Mgm't LLC*, 967 F.3d 1216 (11th Cir. 2020).  There, an insurer brought an action to determine whether it had a duty to defend or indemnify its insured in an underlying state court lawsuit brought by a former tenant, alleging that the

insured had wrongfully withheld the security deposits of current and former tenants.  Among other things, the insured argued that the insurer had waived the policy's "disgorgement and return" exclusions -- provisions that carved out certain types of relief from the definition of "loss" -- by failing to initially raise them as bases for denying coverage, but we disagreed.  *Id.* at 1226 n.8.  We found that "there is no indication in *Hoover* that the Georgia Supreme Court intended to upend the longstanding rule that an insurer cannot waive coverage defenses."  *Id.*  In so holding, we said that "the specific defense at issue in *Hoover* was [untimely notice, which is] a policy defense of the sort Georgia courts have long held is subject to waiver."  *Id.*  Because "the disgorgement and return carve-outs are properly characterized as coverage defenses," we held that the insurer had not waived those defenses in that case.  *Id.*

Thus, our Court interpreted *Hoover* to make a distinction between "policy defenses" and "coverage defenses."  A "policy defense" is one under which an insurer denies coverage based on the insured's failure to fulfill a procedural condition of the insurance policy.  *See Sargent v. Allstate Ins. Co.*, 303 S.E.2d 43, 45–46 (Ga. Ct. App. 1983).  Examples of policy defenses that may be waived include conditions as to other insurance, conditions requiring proof of loss, and conditions requiring timely written notice.  *Id.*  A "coverage defense," by contrast, is an assertion that the insurance policy does not cover the specific injury in question, *see Andrews*, 487 S.E.2d at 4, and includes provisions like exclusions for damage from firearms or due to an insured's defective workmanship.  While

policy defenses may be subject to waiver, coverage defenses are not. *See AEGIS Elec. & Gas*, 967 F.3d at 1226 n.8.

In this case, the alleged property damage in the underlying tort suit, *Bowen*, resulted from "the discharge of water runoff, sediment, silt, and other pollutants." As Selective argues, and Century has never disputed, this damage squarely falls under the Pollution Exclusion in the Policy, which excludes from coverage "property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants," with "pollutants" defined as "any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." The Pollution Exclusion -- which, in its simplest terms, allows Selective to argue that the insurance policy does not cover the specific injury in question -- thereby amounts to a "coverage defense." And so even though Selective did not include the Pollution Exclusion as a reason for denial in its denial letter, Selective did not waive it as a defense against coverage in the instant suit. *See AEGIS Elec. & Gas*, 967 F.3d at 1226 n.8.

Accordingly, the district court did not err by allowing Selective to rely on the Pollution Exclusion after failing to disclose it in its denial letter, and we affirm the district court's grant of summary judgment in favor of Selective.

**AFFIRMED**.