Lyndon B. JOHNSON, Plaintiff–
Appellant,

v.

OCCIDENTAL FIRE AND CASUALTY
COMPANY OF NORTH CAROLINA,
Defendant–Appellee.

No. 91–8566.

United States Court of Appeals,
Eleventh Circuit.

March 6, 1992.

David E. Tuszynski, Nickerson & Tusz-
ynski, Atlanta, Ga., for plaintiff-appellant.

R. Clay Porter, Virginia Greer, Dennis,
Corry, Porter & Thornton, Atlanta, Ga., for
defendant-appellee.

Before HATCHETT and BIRCH, Circuit
Judges, and MORGAN, Senior Circuit
Judge.

HATCHETT, Circuit Judge:

In this diversity case, we affirm the district court and hold that an insurance company's conditional payment of Georgia's basic no-fault benefits in an effort to settle litigation did not constitute an admission that Georgia no-fault insurance provisions applied, or an admission of liability or bad faith.

## I. FACTS

Lyndon B. Johnson, a truck driver for Van Tran Electric Corporation (Van Tran), was involved in a single vehicle accident in Pennsylvania on June 14, 1988, while driving a Van Tran tractor trailer rig. Johnson suffered serious head injuries that left him disabled. At the time of the accident, Van Tran held a policy issued by Occidental Fire & Casualty Company of North Carolina (Occidental), which covered the tractor trailer. The tractor trailer rig involved in the accident was registered in Georgia, titled in Georgia, and bore Georgia license plates. The Occidental policy covering the tractor trailer rig had been issued and delivered to Van Tran at Van Tran's Waco, Texas office, and under Texas law, Van Tran exercised its right to reject personal injury protection (PIP) coverage contained in the policy.

On June 20, 1988, Occidental received its first claim for the cargo spillage resulting from the accident. It was not until February 3, 1989, that the claim examiner assigned to handle the cargo claim received notice of Johnson's claim based on the Georgia Motor Vehicle Accident Reparations Act (No-Fault Act). Occidental responded to the claim on February 10, 1989, and informed Johnson's attorney that the policy was issued in Texas and did not provide no-fault coverage.

## II. PROCEDURAL HISTORY

After Occidental informed Johnson that the policy did not provide no-fault coverage, he filed suit against Occidental in the state court of Fulton County, Georgia, seeking Georgia basic no-fault lost wage benefits of $5,000, penalties, attorney's fees, and punitive damages pursuant to Georgia's No-Fault Act. O.C.G.A. § 33-34-8(c). In an attempt to settle this litigation, Occidental wrote Johnson's attorney and tendered a draft in the amount of $7,522 which represented payment of Johnson's $5,000 no-fault claim plus interest and the statutory twenty-five percent penalty under O.C.G.A. § 33-34-6(b). The letter accompanying the draft, however, stipulated that Occidental disputed Johnson's claim and that its payment of the claim was in no way an admission of bad faith or lack of good faith. Occidental's payment satisfied Johnson's claim for personal injury protection benefits plus the amounts authorized under O.C.G.A. § 33-34-6(b), leaving for trial only the issues of punitive damages and subsequent attorney's fees.

On July 11, 1990, after failing to settle the case, Occidental removed the case to the United States District Court for the Northern District of Georgia, Atlanta Division. On January 31, 1991, Occidental moved for summary judgment on the ground that Texas law controls the construction of the policy, and under Texas law, Van Tran's waiver of minimum no-fault coverage was valid. Additionally, Occidental moved for summary judgment on the ground that Georgia's No-Fault Act did not apply to this policy and that punitive damages are disallowed as a matter of law because the action presented a question of first impression on a close legal issue.

Johnson filed a motion for summary judgment and statement of facts contending that Occidental's payment of the claims amounted to an admission that Georgia law applies as well as an admission of bad faith. The district court entered judgment in favor of Occidental based on the following: (1) Texas law applied to the applicable policy, (2) Georgia's No-Fault Act is inapplicable to the case, (3) the application of Texas law in this case does not contravene the public policy of the state of Georgia, and (4) Occidental did not acquiesce or agree that Georgia's No-Fault Act applied to the present facts. The district court also denied Johnson's motion for summary judgment.

## III. ISSUES

On appeal, Johnson raises the following two issues: (1) whether the district court correctly determined that under Georgia's conflict of laws, Texas law applied to interpret the Occidental insurance policy issued to Van Tran; and (2) whether Occidental's tender of Georgia no-fault personal injury protection benefits plus interest and twenty-five percent statutory penalty to Johnson in an effort to settle the litigation constituted an admission of liability or bad faith and established the applicability of Georgia law.

## IV. CONTENTIONS

Johnson contends that the district court erred in applying Texas law because Georgia law applied for the following reasons: (1) the Van Tran tractor trailer rig was registered in Georgia; (2) Johnson was a Georgia resident; (3) Occidental transacted business in Georgia; and (4) the Occidental policy complied with Georgia's No–Fault Act. Additionally, Johnson contends that Occidental's unconditional and voluntary payment of the penalties under O.C.G.A. § 33–34–6(b) demonstrated a lack of good faith and constituted an admission of liability or bad faith establishing the applicability of Georgia law. On the other hand, Occidental contends that the district court correctly determined that Georgia's conflict of law rules would apply Texas law because the place where the policy is issued, not where the vehicle is licensed or garaged, determines the applicable no-fault policy provisions. Occidental contends that it is undisputed that the contract was formed in Texas, executed in Texas, and delivered to Van Tran's Waco, Texas office. Thus, Texas law applies. Occidental also contends that the district court correctly recognized that an offer to compromise a disputed claim is not evidence of an admission of guilt or liability, nor does it establish that Georgia law applies.

## V. DISCUSSION

In accordance with Georgia's No–Fault Act, O.C.G.A. § 33–34–1 et seq. (1990), Occidental paid Johnson benefits plus interest, statutory penalties, and attorney's fees in an attempt to settle this litigation. Johnson's only remaining claim is his entitlement to punitive damages under Georgia's No–Fault Act and attorney's fees incurred in pursuing recovery of the punitive damages.

■ The law is well settled that federal courts sitting in diversity cases must apply the forum state's conflict of law rules in order to resolve substantive legal issues. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *General Telephone Co. of the Southeast v. Trimm*, 706 F.2d 1117 (11th Cir.1983); *Hayes v. Irwin*, 541 F.Supp. 397 (N.D.Ga.1982), *aff'd*, 729 F.2d 1466 (11th Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 185, 83 L.Ed.2d 119 (1984). Thus, the United States District Court for the Northern District of Georgia had to apply the conflict of law rules of the state of Georgia in determining whether the law of Georgia or the law of Texas governed Johnson's ability to collect punitive damages and additional attorney's fees.

■ The Georgia Supreme Court, in answering a certified question posed by the United States Court of Appeals for the Eleventh Circuit, established the Georgia conflict of law rule for deciding which law governs the interpretation of a contract. *General Telephone Co. of the Southeast v. Trimm*, 252 Ga. 95, 311 S.E.2d 460 (1984). The Georgia Supreme Court held in *General Telephone* that Georgia adheres to the traditional approach of *lex loci contractus*, which provides that

> [contracts] are to be governed as to their nature, validity, and interpretation by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a state other than that in which it was made, in which case ... the laws of that sister state will be applied....

*General Telephone*, 311 S.E.2d at 461 (quoting *Tillman v. Gibson*, 44 Ga.App. 440, 442–43, 161 S.E. 630 (1931)). Additionally, the Georgia Supreme Court stated that "in order to determine where a con-

tract was made, the court must determine where the last act essential to the completion of the contract was done." *General Telephone*, 311 S.E.2d at 461; *see Hayes*, 541 F.Supp. at 414. With regard to insurance contracts, Georgia law provides that the last act essential to the completion of the contract is delivery; consequently, insurance contracts are considered made at the place where the contract is delivered. *Iowa State Travelers Mutual Assn. v. Cadwell*, 113 Ga.App. 128, 147 S.E.2d 461 (1966); *see Avemco Insurance Co. v. Rollins*, 380 F.Supp. 869 (N.D.Ga.), *aff'd*, 500 F.2d 1182 (1974). In this case, the insurance policy was formed in Texas, executed in Texas, and delivered to Van Tran's Waco, Texas office. Additionally, the Van Tran tractor-trailer rig covered under the insurance policy was to be principally garaged in Waco, Texas. Thus, under the rule of *lex loci contractus*, Texas law applies.

■ Nevertheless, Georgia's conflict of law rules create an exception to the general rule of *lex loci contractus* where a state "has no substantial relationship to the parties or the transaction, or the result obtained from the applicability of the law of the chosen state would be contrary to Georgia's public policy." *Ryder Truck Lines, Inc. v. Goren Equipment Co.*, 576 F.Supp. 1348, 1354 (N.D.Ga.1983). If the exception is applicable, Georgia's conflict of law rules mandate the application of Georgia law. *See Ryder*, 576 F.Supp. at 1354. In this case, however, Texas clearly has a substantial relationship to the parties and the transaction. Thus, we must determine whether the application of Texas law contravenes the public policy of Georgia.

■ Under article 5.06–3(a) of the Texas Insurance Code, Texas law requires no-fault insurance unless the insured rejects the coverage in writing. As manifested in the Official Code of Georgia Annotated § 33–34–3, Georgia has as an important public policy of providing compensation to Georgia citizens injured in motor vehicle accidents. The Texas practice of allowing insureds to reject no-fault insurance coverage, does not conflict with Georgia's public

policy because the Georgia Code makes provisions for motorists covered under a plan such as the Texas Code. Section 33–34–3(a)(2) of the Georgia Code provides that

> notwithstanding any provisions of the policies or contracts to the contrary, all such policies or contracts of insurance shall be deemed to satisfy the minimum requirements of this chapter if a motorist insured under the policies or contracts of insurance is involved in a motor vehicle accident in this state.

This section of the Code ensures that Georgia residents and accident victims will be protected if they are injured in Georgia by a motorist covered under a plan such as the Texas Code contemplates. Hence, the Texas statute which allows the written waiver of no-fault coverage does not controvert the public policy of Georgia which seeks to provide no-fault insurance protection to persons injured in Georgia.

■ Finally, Johnson contends that the question of whether Texas law applies is moot because Occidental's actions have admitted the applicability of Georgia's law. Johnson argues that Occidental's payment of the Georgia no-fault benefits plus interest, the full statutory penalty provided under Georgia's No–Fault Act, and the tender under Georgia's No–Fault Act of attorney's fees constituted an admission that Georgia law applies. According to Johnson, this admission precludes application of Texas law. Johnson bases this argument on Georgia's long-recognized rule that payments which constitute direct acknowledgement of claims are admissible. *White v. The Front Page, Inc.*, 133 Ga.App. 749, 213 S.E.2d 32 (1975). Johnson fails to consider the remainder of the Georgia rule, which is consistent with rule 408 of the Federal Rules of Evidence.

The Georgia Court of Appeals provided in *White* that, based on section 38–408 of the Georgia Code, "admissions or propositions made with a view to a compromise, are not proper evidence." *White*, 213 S.E.2d at 33. Additionally, the court held in *White* that voluntary payments made for humanitarian purposes are also not proper

evidence. The court noted, however, that "absent an effort to compromise, admissions against interest or payments which constitute direct acknowledgement of claims are admissible." *White*, 213 S.E.2d at 33. Consistent with the notes accompanying rule 408, the Court of Appeals of Georgia recognized that the purpose of the rule disfavoring the admission of settlement and compromise negotiations is to encourage settlements and to allow parties to freely engage in negotiations. *See Computer Communications Specialists, Inc. v. Hall*, 188 Ga.App. 545, 373 S.E.2d 630 (1988); Fed.R.Evid. 408 notes of advisory committee on 1972 proposed rules.

In this case, Occidental's payment of money to Johnson was an effort to compromise or settle Johnson's claim and to avoid litigation. Additionally, the letter accompanying Occidental's payment to Johnson specifically stated that it disputed Johnson's entitlement to punitive damages and that the payments in no way constituted an admission of bad faith or lack of good faith. Occidental also disputed the application of Georgia law in all cases where Georgia law is inconsistent with the insurance policy. The district court correctly pointed out that the evidence in the record did not support Johnson's position which, if adopted, would undercut the established policy of encouraging negotiation and settlement. Thus, Occidental's actions did not admit the applicability of Georgia law, and based on the rule of *lex loci contractus*, Texas law governs. Since the only issue remaining in this lawsuit was Johnson's entitlement to punitive damages and attorney's fees on the basis of O.C.G.A. § 33–34–6(b), the district court properly granted Occidental's motion for summary judgment after determining that Texas law is applicable in this action.

## VI. CONCLUSION

The district court correctly determined that Georgia's conflict of law rules mandate the application of Texas law because the insurance contract was formed, executed, and delivered in Texas. Additionally, we hold that an offer to compromise a disputed claim is not evidence of an admission of liability or bad faith, nor does it establish the applicability of Georgia law. For the foregoing reasons, we affirm the district court.

AFFIRMED.